402 So.2d 644 (1981)
STATE of Louisiana
v.
Darrell MILES.
No. 80-KA-2779.
Supreme Court of Louisiana.
June 22, 1981.
Rehearing Denied September 4, 1981.
*645 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Donald Foret, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Arthur L. Harris, Harris, Stampley, McKee, Lombard & Cates, New Orleans, for defendant-appellant.
MARCUS, Justice.
Darrell Miles was indicted by the grand jury for the crime of aggravated rape in violation of La.R.S. 14:42. After trial by jury, defendant was found guilty as charged and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On appeal, defendant relies on nine assignments *646 of error for reversal of his conviction and sentence.[1]
At trial, the victim testified that at approximately 11:00 p. m. on Friday, December 15, 1978, she left the sweet shop owned by her parents on Hollygrove Street in New Orleans. She walked to the next block and entered the Peacock Lounge where she ordered a drink and conversed with a girlfriend. During this time, she noticed defendant whom she had never seen before. After being in the bar for about fifteen minutes, she headed for home walking out of the bar towards the bus stop located a block away at the corner of General Ogden and Pontchartrain Boulevard. After unsuccessfully attempting to catch a departing bus, she noticed defendant lurching along drunkenly across the street from her. He asked her for directions on how to get uptown and she informed him that he would have to cross the street and catch the bus on her side of the street.
Defendant crossed the street and got behind the victim who was sitting on a fire hydrant smoking a cigarette. She testified that she then felt an object in her back and heard defendant say, "This is a stick-up." She turned around in disbelief and heard defendant say, "I'm not kidding, this is a stick-up. I don't want your money, I want your body." Holding a pistol at her back, he led her across the street and behind some bushes. He then held the pistol at her breast forcing her to remove her pants and panties. From his pants, he removed a magazine that had a picture of a woman's breasts on the cover. He told the victim to lie down on the ground where he proceeded to have vaginal and anal intercourse with her.
Defendant then told her that he was going to let her go but warned her not to tell anybody of the incident. He allowed her to put on her pants and then he emptied the contents of her purse into his hand. Some pennies fell on the ground. He allowed the victim to take some change for bus fare and stood behind a picket fence holding his gun as he watched her get on a bus. She took the bus to the intersection of Carrollton and Palmetto where she exited and called her mother from a pay phone by the K & B Drugstore. Her mother picked her up and brought her back to her house where the victim told her mother the story. When her father arrived home and was told of the incident, he advised her to call the police.
When the police arrived at the house at about 12:45 a. m., the victim stated her attacker had an afro and was wearing a "B-bob" cap, white V-neck shirt, brown speckle pants, brown shoes and tinted round glasses. Detectives then brought the victim back to the scene of the crime where they recovered her panties and the magazine defendant removed from his pants. Shortly thereafter at about 1:55 a. m., while sitting in a police car with two detectives, she saw defendant coming out of the parking lot of an apartment building located across the street. She told the officers that he was the man who raped her. The officers alighted from the vehicle and arrested defendant who was wearing a white shirt, dark pants and a "B-bob" cap. He was brought over to the car where the victim identified him as her attacker. The victim was then taken to the coroner's office for tests which indicated the presence of seminal fluid and spermatozoa in her vagina.
An expert in the field of fingerprints and fingerprint identification testified that three of the four latent fingerprints he was able to lift off the magazine found at the scene of the crime matched those of defendant. An expert in criminology testified that tests he conducted on the genital areas of the victim's panties and defendant's undershorts both indicated the presence of seminal fluid.
Defendant testified that he was in the general vicinity of the Peacock Lounge at the approximate time of the rape; however, he denied seeing the victim that evening. He also claimed that at central lockup he *647 was beaten and forced to touch and look through the magazine, thus leaving his fingerprints on its cover.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in allowing in evidence photographs and other physical evidence. At trial, he objected to the relevancy and materiality of the evidence; in brief to this court, he contends the items were evidence of other crimes.
Over defendant's objection, the state was allowed to enter in evidence a series of photographs taken at the scene of the crime, including a picture of the magazine found at the site, pictures of the general area, pictures of the ground behind the bushes where the rape occurred and a closeup picture of the rape site showing a couple of pennies on the ground. The state also entered in evidence the following: the victim's panties found at the scene, the magazine bearing defendant's fingerprints, a pair of defendant's shorts showing traces of seminal fluid, a slide of fingerprints removed from the magazine and fingerprints taken of the defendant the day before trial.
To be admissible in a criminal proceeding, evidence must be relevant to a material issue. La.R.S. 15:435. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. La.R.S. 15:441. The trial judge is vested with wide discretion in determining the relevancy of evidence, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Hathorn, 395 So.2d 783 (La.1981).
Photographs are admissible when they are shown to be accurate representations of the subject in question and shed light on the matter before the court. State v. Otis, 339 So.2d 343 (La.1976). The photographs in question are accurate representations of the scene of the rape. They were useful in corroborating the testimony of police and the victim. Clearly, the photographs were relevant and admissible. Hence, defendant's objection to their admissibility was properly overruled.
All of the physical evidence admitted was relevant to material issues. The panties of the victim and the shorts taken from defendant both showed traces of seminal fluid thus tending to prove that both had recently engaged in sexual activity. The fingerprint evidence relating to the magazine corroborated the victim's story that defendant was at the scene of the rape and had left a magazine there. Clearly, such evidence was admissible.
In brief to this court, defendant argues that the state introduced photographs and testimony of other crimes, in particular a theft and robbery, without providing him with pretrial notice of its intent to introduce such evidence. At trial, defendant made no objection to the testimony of the victim that defendant initially told her, "This is a stick-up." Nor did he object to her testimony that after the rape he emptied the contents of her purse into his hand. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. Code Crim. P. art. 841. Hence, defendant waived any objections to the alleged errors by failing to timely object. In any event, all of defendant's actions at the scene of the rape formed one continuous transaction and as such constituted part of the res gestae of the offense charged. La.R.S. 15:448. What forms any part of the res gestae is always admissible in evidence. La.R.S. 15:447. As the victim's testimony was independently admissible as res gestae of the charged offense, the state was not required to provide defendant with pretrial notice of its intent to introduce such evidence at trial. State v. Lawson, 393 So.2d 1260 (La.1981).
Assignment of Error No. 2 is without merit.

ASSIGNMENTS OF ERROR NOS. 4, 5, 6, 7 AND 8
Defendant contends the trial judge erred in overruling his objections to remarks by the prosecutor in closing argument. He *648 argues that the remarks went beyond the permissible scope thereof.
During closing argument in discussing rape cases in general, the prosecutor observed that there are usually no witnesses and that both victim and defendant testify. He further stated that the victim could be believed or disbelieved but that it was a matter of "one on one." He then added "that happens in ninety-nine percent of the rape cases. And you read the paper...." At this point, defendant objected and the judge directed the prosecutor to "[j]ust stay out of the papers." The prosecutor then stated that, "Ninety-nine percent of all rape cases are one on one," once again drawing an objection from defendant. The judge told the prosecutor to proceed, reminding him that "this is argument, not testimony."
If an objection is sustained, defendant cannot on appeal complain of the alleged error unless at trial he requested and was denied either an admonition to disregard or a mistrial. State v. Nicholas, 359 So.2d 965 (La.1978). Defendant requested neither an admonition nor a mistrial after his objections regarding statistics of rape cases were sustained. Hence, he cannot complain on appeal of the alleged errors.
While describing the events of the evening, the prosecutor stated:
The father comes home, uses his good sense, and say[s], "We ought to call the police." Not next week, not tomorrow; right now. We got to go back to the scene.
Defendant objected on the ground that the father did not testify. The judge did not respond to this objection and the prosecutor continued. La. Code Crim. P. art. 774 provides that the argument shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. We consider the remarks of the prosecutor regarding the victim's father to be within the scope of art. 774. Although the victim's father did not testify at trial, the victim testified that her father advised her to call the police. Hence, the prosecutor's remarks related to evidence admitted.
During rebuttal, the prosecutor explained why the victim's parents were not in court. Defendant objected on the ground that "that is not in evidence." The objection was overruled by the trial judge, who stated, "You raised the issue, he's got a right to answer." The prosecutor's explanation was within the scope of art. 774 as it related to conclusions of fact drawn by defendant regarding the failure of the victim's parents to be in court.
Defendant's explanation of why his fingerprints were discovered on the magazine found at the scene of the rape was that the police forced him to touch and look through the book by beating him. To refute this explanation, the prosecutor stated, "Well, if the police are going to make him put his fingerprints on this [referring to the magazine], they're going to make every other criminal put their fingerprints." Defendant's objection that the remark was inadmissible was overruled. The prosecutor continued, "They're going to make every other criminal put their fingerprints on any type of evidence they might have. But it's not done." These remarks were proper under art. 774 as they related to testimony of the defendant and conclusions drawn therefrom.
Moreover, even in the event that the above remarks constituted improper argument, we will not set aside a verdict unless we are thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Simms, 381 So.2d 472 (La.1980). Such was clearly not the case here.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends the trial judge erred in denying his motion for a new trial based on newly-discovered evidence.
At the hearing on the motion for a new trial, defendant called Leslie Davis and *649 Kevin Pepp who both testified that the victim's mother asked them to accompany her to the K & B Drugstore at Carrollton and Palmetto to pick up her daughter on the night in question. They stated that in the car the victim told them that she did not get raped but rather that someone had tried to rape her. They further testified that the victim described her attacker as wearing a light colored cap and being the same build, height and complexion as Pepp who was noticeably bigger and taller than defendant. Davis testified that about a week after the incident, the victim came out of the Peacock Lounge and told him that she had seen the guy who had raped her and that they had the wrong person. He also stated that he did not find out that defendant had been arrested for the rape until after completion of the trial. This testimony directly conflicted with Pepp's testimony that he was told by Leslie Davis on the night of the incident that defendant had been arrested for the rape.
The victim and her mother testified that, although Davis and Pepp were in the car, neither was told by the victim that there had been a rape or an attempted rape or given a description of her attacker. The victim was upset and crying. She stated that all she said was something about a man having a pistol. She further testified that about a week after the rape, she ran out of the Peacock Lounge and said she had seen defendant, the man whom she had identified as her attacker. The state noted for the record that defendant was out on bail twelve days after he was arrested.
Under La. Code Crim. P. art 851(3), the court, on motion of defendant, shall grant a new trial whenever:
New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;....
This court has consistently held that the trial judge is accorded considerable discretion in evaluating the impact of newly-discovered evidence on the verdict and its reliability, and his ruling will be disturbed on appeal only where there is a clear showing of abuse of discretion. In considering a motion for a new trial based on newly-discovered evidence, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Williams, 362 So.2d 530 (La.1978).
In the instant case, the testimony of Davis and Pepp regarding the victim's statements made in the car was in direct conflict with that of the victim and her mother. Although the trial judge did not assign reasons for denying defendant's motion for a new trial, it is obvious that he did not believe the testimony of Davis and Pepp. Moreover, when considering the evidence adduced against defendant at trial, that is, the victim's positive identification of him approximately two hours after the rape and at trial, his fingerprints on the magazine found at the scene of the crime, the presence of seminal fluid on both the panties of the victim and the underwear of defendant, the presence of seminal fluid and spermatozoa in the victim's vagina, the victim's accurate description of her attacker to police before she later identified him at the scene and even the pennies found at the scene that the victim told police had fallen out of her purse, it is clear that the evidence produced at the new trial hearing was not so material that it would have produced a different result than the verdict reached. Accordingly, the trial judge did not err in denying defendant's motion for a new trial.
Assignment of Error No. 9 is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
NOTES
[1] Assignments of Error Nos. 1 and 3 were neither briefed nor argued. We therefore consider these assignments of error to have been abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Carlisle, 315 So.2d 675 (La. 1975).