393 So.2d 1260 (1981)
STATE of Louisiana
v.
Burnell LAWSON.
No. 80-KA-1640.
Supreme Court of Louisiana.
January 26, 1981.
*1262 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis Dugas, Dist. Atty., John J. Erny, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Grisbaum & Kleppner, Ferdinand J. Kleppner, Metairie, for defendant-appellant.
MARCUS, Justice.[*]
Burnell Lawson was charged in separate bills of information with possession with intent to distribute piperidinocyclohexanecarbonitrile (PCC) and phencyclidine (PCP) in violation of La.R.S. 40:966 and 40:967. After trial by jury, defendant was found guilty as charged and sentenced to serve three years at hard labor on each count with the sentences to run concurrently. On appeal, defendant relies on eight assignments of error for reversal of his convictions and sentences.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in permitting the state to amend the bills of information after trial had begun.
After several jurors had been selected,[1] the state moved to amend the informations *1263 to correct the dates of the alleged offenses from October 17, 1979 to September 17, 1979. The state also moved to amend the information charging defendant with possession of phencyclidine (PCP) with intent to distribute to state a violation of La.R.S. 40:967 rather than 40:966. The trial judge ordered the amendments. Defendant made no objection. Thereafter, upon rearraignment, defendant waived the reading of the amended informations.
This court has consistently held that an objection not contemporaneously raised in the lower court or ruled on by the trial judge cannot be availed of on appeal. La. Code Crim.P. art. 841; State v. O'Blanc, 346 So.2d 686 (La.1977); State v. Williams, 343 So.2d 1026 (La.1977). Hence, absent an objection here, nothing is presented for our review.
In any event, the date or time of the commission of an offense need not be alleged in the indictment, unless the date or time is essential to the offense. La.Code Crim.P. art. 468. The court may cause an indictment to be amended at any time with respect to a defect of form. La.Code Crim.P. art. 487. A mistake respecting the date on which the offense occurred has been held to be such a defect of form when not essential to the offense. State v. Dye, 384 So.2d 420 (La.1980); State v. Drew, 360 So.2d 500 (La.1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979). The dates are not essential to the offenses charged here. Therefore, the mistakes respecting the dates on which the offenses occurred were ones of form which may be amended at any time. Additionally, La. Code Crim.P. art. 464 provides that an error in the citation of the statute which defendant is alleged to have violated shall not be ground for dismissal of the indictment or for reversal of a conviction if the error did not mislead defendant to his prejudice. Here, defendant made no showing of prejudice resulting from the erroneous citation of the statute violated, and the information clearly stated the offense with which defendant was charged, that is, possession of a controlled dangerous substance, to-wit: phencyclidine, with intent to distribute. Hence, the trial judge did not err in allowing the state to amend the informations.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in denying his motion for a continuance on the ground that he was no longer indigent and desired to substitute retained counsel for that previously appointed by the court.[2]
At the arraignment on October 22, 1979, defendant was not represented in court by an attorney but informed the court that Mr. Gordon Hackman represented him. Mr. Hackman represented defendant at a pretrial conference on November 29, 1979, but was allowed to withdraw as counsel on December 10, 1979 upon defendant's failure to make adequate financial arrangements. On February 6, 1980, the date set for trial, defendant informed the court that he was unrepresented and the court, finding him financially unable to employ counsel, appointed Mr. Steven Caillouet to represent him. However, following a recess, Mr. Caillouet was permitted to withdraw as counsel because of a conflict of interest. The court then appointed Mr. Bernard Knobloch, Jr. to represent defendant, and he subsequently represented him at at pretrial conference on February 27, 1980 and at a bail reduction hearing on March 3, 1980. On the day set for trial, April 7, 1980, defendant was represented by Mr. Knobloch and the jury was selected. Upon agreement of the parties, the court declared a recess to allow the state to secure the appearance of a witness. On the morning that trial resumed, April 10, 1980, the court was contacted by telephone by Mr. Ferdinand Kleppner who stated that he had been retained to represent defendant but, due to previous commitments, he was unable to participate in the *1264 trial on that day or the next and was requesting a continuance. At trial, Mr. Knobloch moved for a continuance to allow the substitution of Mr. Kleppner as defendant's counsel. The trial judge denied the motion and ordered that Mr. Knobloch's appointment be continued through the course of the trial.
Defendant's right to the assistance of counsel is guaranteed by both state and federal constitutions. U.S.Const. amend. VI; La.Const. art. 1, § 13. The right of a defendant to counsel of his choice has been implemented by La.Code Crim.P. art. 515, which provides in pertinent part:
Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by this court.
This court has, however, consistently interpreted this right as one which cannot be manipulated to obstruct the orderly procedure in our courts and which cannot be used to interfere with the fair administration of justice. The right of defendant to counsel of his choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. State v. Lee, 364 So.2d 1024 (La.1978).
In the instant case, defendant waited until after commencement of trial to assert his right to be represented by another attorney. Retained counsel was not present in court or able to proceed with his client's defense at that time. Defendant had been adequately represented by appointed counsel in two pretrial matters. The case had previously been delayed by defendant's inability to make financial arrangements with other retained counsel. Given these facts, we cannot say that the trial judge erred in denying defendant's motion for a recess to allow substitution of retained counsel.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in allowing the state to elicit testimony from Trooper Richard Hazelwood concerning additional criminal activity by him. He argues that if the testimony was admissible, the state failed to provide him with pretrial notice of its intent to introduce such evidence as required by State v. Prieur, 277 So.2d 126 (La.1973).
During direct examination, Trooper Hazelwood testified that on the night in question, he and a DEA agent met with defendant and arranged to purchase a gram of phencyclidine (PCP). After agreeing on the price, the officers and defendant discussed the availability for purchase of an additional ounce of PCP. Defendant objected to this testimony on the ground that it was not relevant. The trial judge overruled the objection. Trooper Hazelwood then stated that upon showing defendant four thousand dollars in one hundred dollar bills, defendant stated that he could get the officers a pound of PCP if they wanted it and that he was sure he could obtain that amount "because his connection in New Orleans made the stuff." Thereafter, defendant agreed to obtain an ounce of PCP for the officers and arrangements were made to meet two days later in Raceland for the purpose of going to New Orleans to make the purchase.
Evidence of crimes related to the offense with which a defendant is charged in inadmissible except under special exceptions. La.R.S. 15:445-446 provide statutory exceptions for evidence of other criminal acts relevant to show intent, knowledge or system. In the instant case, it is clear that defendant's agreement to obtain additional PCP in the future and to sell it to the officers was directly probative of defendant's guilt in the commission of the crimes charged, that is, the knowing and intentional possession of controlled dangerous substances with the intent to distribute. Further, defendant's agreement as to the future transaction made at the time of the sale upon which this prosecution is based forms one continuous transaction and as *1265 such constituted part of the res gestae of the offenses charged. La.R.S. 15:448. What forms any part of the res gestae is always admissible in evidence. La.R.S. 15:447. Hence, the trial judge did not err in overruling defendant's objection to the other crimes evidence.
As Trooper Hazelwood's testimony as to defendant's statements was independently admissible as res gestae of the charged offenses, the state was not required to provide defendant with pretrial notice of its intent to introduce such evidence at trial. State v. Prieur, supra; State v. Brown, 340 So.2d 1306 (La.1976).
Assignment of Error No. 3 is without merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 6
Defendant contends the trial judge erred in accepting Mary Sue Brown as an expert in the analysis of controlled dangerous substances (Assignment of Error No. 4) and in allowing her to testify concerning the results of a mass spectrophotometer test performed on the drugs in question (Assignment of Error No. 6).
At trial, Ms. Brown, a forensic scientist, testified as to her qualifications as an expert in the analysis of controlled dangerous substances. She stated that she had been assigned to examine the drugs in question. The drugs were submitted to three tests: an ultraviolet spectrophotometer, a gas chromatograph, and a mass spectrophotometer. She testified that she had administered the first two tests for which she had been trained and, although her supervisor had performed the third test (mass spectrophotometer), she had handed the sample to her for injection into the machine and was present and watched the performance of the test. Although the supervisor had operated the computer keyboard to set the sample, the temperature and time run for the test, Ms. Brown knew how the mass spectrophotometer operated and was trained to read the resulting graphs. Defendant objected to the acceptance of Ms. Brown as an expert in the analysis of controlled dangerous substances by stating that, while he was willing to accept her as an expert in the "operation of the ultraviolet test and with regard to the gas chromatograph," he would object "to her testimony asto blanket testimony as a witness on the analysis of controlled dangerous substances." After further questioning by the court, Ms. Brown was accepted as an expert witness in the analysis of controlled dangerous substances at which time defendant again noted his objection. Ms. Brown then testified that the results of the three tests indicated that the substance contained PCP and that the mass spectrophotometer test indicated that the substance also contained PCC. Subsequently, the state introduced in evidence the tests run by Ms. Brown, including the mass spectrographs, and the control with which the graphs were compared. The court inquired if defendant had any objection to the introduction of this physical evidence, to which defendant replied in the negative.
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert, his competency so to testify must have been established to the satisfaction of the court. La.R.S. 15:466. We have consistently held that the competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge. His rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. State v. Drew, 360 So.2d 500 (La. 1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979); State v. Lewis, 353 So.2d 703 (La.1977). The record discloses that Ms. Brown had worked as a forensic scientist for the Louisiana State Police Crime Lab specializing in the analysis of controlled dangerous substances for one and one-half years. She held a bachelors degree in zoology from LSU and had three years of college chemistry including organic, inorganic, and quantitative analysis. She had undergone six months additional training at the lab including training in handling evidence, *1266 preparing reports and analyzing different types of drugs. She had run tests for PCP approximately twenty times before and the test for PCC was the first conducted by the lab for that drug. She had been accepted by a court as an expert in the analysis of controlled dangerous substances on a previous occasion. We cannot, therefore, find that the trial judge abused his discretion in overruling defendant's objection to Ms. Brown's qualifications as an expert in this field.
Defendant further contends the trial judge erred in admitting the testimony of Ms. Brown concerning the results of the mass spectrophotometer test because she had not actually performed the test. The record reflects that defendant objected only to Ms. Brown's "blanket testimony as a witness on the analysis of controlled dangerous substances." He did not state that his objection was based on the fact that Ms. Brown had not performed the mass spectrophotometer test. Moreover, when the results of the mass spectrophotometer test were introduced in evidence, he made no objection. Consequently, we consider that defendant waived any objection to Ms. Brown's testimony as to the reliability of the testing procedure or the results. Ms. Brown was clearly qualified as an expert in his field and was competent to offer opinion testimony based on the graphs resulting from the test. Moreover, Ms. Brown was present during the entire performance of the test and was knowledgeable as to how the mass spectrophotometer operated. Under these circumstances, we are unable to say that the trial judge erred in allowing Mr. Brown to testify concerning the results of the mass spectrophotometer test performed on the drugs in question.
Assignments of Error Nos. 4 and 6 are without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in admitting in evidence the drugs in question on the ground that the state failed to establish a proper chain of custody.
Trooper Richard Hazelwood testified that he purchased from defendant a clear plastic package triangular in shape which contained a coarse brown powder which resembled PCP. Following the transaction, Trooper Hazelwood placed the package in a state police evidence envelope which he initialed, dated and sealed with the special seal used for this purpose. The envelope was then transported to the Louisiana State Police Crime Lab in Baton Rouge for analysis. On the basis of crime lab records, Mary Sue Brown, a forensic scientist with the Louisiana State Police Crime Lab, testified that this envelope had been received from Trooper Hazelwood by the evidence technician there. He then placed the envelope in the evidence locker. Ms. Brown later took the envelope from the locker to analyze the contents. She testified that the envelope still bore the special state police seal which she then broke. The testing consumed approximately two-tenths of a gram of the substance which was identified as PCP and PCC. The remainder of the substance in the plastic package was then placed inside Trooper Hazelwood's envelope which was then placed inside another envelope and sealed by Ms. Brown. On the day of trial, Ms. Brown returned the evidence to Trooper Hazelwood who broke the seal in open court and identified the envelope he had sent to the crime lab and the plastic package containing a coarse brown powder which he had purchased from defendant. Ms. Brown also identified the envelopes and the clear plastic package containing the substance which she tested. The envelopes, plastic package and its contents were subsequently admitted in evidence by the trial court as State Exhibit Number One.
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. For the admission of demonstrative evidence, it suffices if the foundation laid establishes *1267 that it is more probable than not that the object is the one connected with the case. Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Paster, 373 So.2d 170 (La.1979); State v. Drew, 360 So.2d 500 (La.1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979).
In the instant case, we find that the state adequately established identification of the drugs by chain of custody, that is, by establishing custody of the drugs from the time they were recovered from defendant until offered in evidence. Hence, the trial judge did not err in admitting the drugs in evidence.
Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant contends the trial judge erred in denying his motion for a new trial based on certain grounds previously considered in Assignments of Error Nos. 2 and 4. For the reasons assigned therein, Assignment of Error No. 7 is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant contends the trial judge erred in imposing an excessive sentence.
Following defendant's convictions on charges of possessing PCP and PCC with intent to distribute, the trial judge sentenced defendant to three years at hard labor on each count, said sentences to run concurrently.[3] Pursuant to the requirements of La.Code Crim.P. art. 894.1, the trial judge stated at length for the record the considerations taken into account and the factual basis therefor in imposing sentence.
La.Const. art. 1, § 20, prohibits the imposition by law of excessive punishment. Accordingly, we have held that imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional rights against excessive punishment that is enforceable by this court on appellate review. The trial judge's reasons in imposing sentence, as required by art. 894.1, are an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Spencer, 374 So.2d 1195 (La.1979); State v. Sepulvado, 367 So.2d 762 (La.1979). Moreover, the trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Spencer, supra; State v. Sepulvado, supra.
In the instant case, after reviewing the trial judge's reasons for imposing sentence contained in the record, we are unable to say that the sentences are excessive. Clearly, the trial judge did not abuse his discretion.
Assignment of Error No. 8 is without merit.

DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.
NOTES
[*] Judges Edmond L. Guidry, Jr., J. Burton Foret and P. J. Laborde, Jr. of the Court of Appeal, Third Circuit, participated in this decision as associate justices ad hoc, joined in by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] A jury trial commences when the first prospective juror is called for examination. La. Code Crim.P. art. 761. Hence, trial had begun here.
[2] Since the motion was made after the selection of the jury, trial had commenced. La.Code Crim.P. art. 761. Since a continuance cannot be granted after trial has commenced, the trial judge properly treated the motion as one for a recess. La.Code Crim.P. art. 708.
[3] The penalty provisions of La.R.S. 40:966 and 967 provide that a person convicted of violating those statutes shall be sentenced to a term of imprisonment at hard labor for not more than ten years and may be required to pay a fine of not more than fifteen thousand dollars.